Good morning, Your Honors. Kirk Hanson for the plaintiffs and appellants in the Ward and video matters. Your Honors, I'd like to start this morning by discussing, which is, I think, the first issue addressed in the briefs, which is the extraterritoriality issue. And I think the rule is that the Court looks at the actual language of the statute first. And the Court looks at what activity or what conduct does the statute aim to control. I think maybe I got ahead of myself. Actually, the Court first looks and sees, is there something in the statute that says the statute should be applied outside the state? So can I start with a question about that? Absolutely. Looking at Section 1E of Wage Order 9 in California law, it seems that there are certain things that don't apply when you have a collective bargaining agreement that complies with the RLA. And then other parts of state law still do apply. But it seems like one of the things that doesn't apply are wage statement rules under Section 7. So I'm not sure why state law even says that it applies to this case. Well, I think if you're looking at, for example, if the collective bargaining agreement somehow trumps or preempts Labor Code Section 226, that wouldn't happen here. Labor Code Section 226, it's an independent state right that exists outside of the collective bargaining agreement. No, I'm not talking about the RLA preemption that was briefed in this case. I'm talking about an issue that wasn't briefed in this case, which is the California wage order that interprets the California Labor Code. And my understanding is that it pretty explicitly says that if you have a collective bargaining agreement under the RLA, that as a matter of California law, not as a matter of Federal preemption, that wage statement rules under Section 7B, which are covered by Section 7B, don't apply. Your Honor, I believe in the wage orders. There are certain California Labor Code sections that will not apply, potentially, like overtime rules. It depends on how much you're getting paid for overtime. You have to reach a certain threshold, for sure. But I don't recall that the wage orders say that if there's a collective bargaining agreement in place, that then Labor Code Section 226 is barred. I'm looking at a portion of Wage Order 9, the portion governing overtime, minimum wages, and records. And it says that it, quote, shall not be deemed to cover those employees who have entered into a collective bargaining agreement under and in accordance with provisions of the Railway Labor Act. What could be more explicit than that? Because I think, Your Honor, there are certain requirements in the Labor Code beyond what employees get in a pay stud. In other words, there are certain requirements that employers have to keep records, certain kind of records, and they have to keep them for a certain amount of time. I think it's three years or more. And they also have to make them available upon request to the employee. I don't think that section that Your Honor just read covers the situation we have here, where Labor Code Section 226A says, here's your information that an employer must give to a California employee who's getting paid in California, who lives in California, you know, the nine different subsections. I think that's outside of the wage order portion you just quoted there. I think it's a different issue. I think you're talking about. Did you see the footnote in Goldthorpe about this? In the Goldthorpe, I'm trying to remember the Goldthorpe footnote. That's a recent case. I think it just came down on behalf of pilots against Cathay Pacific. My understanding is it interprets it the same way that we're asking about. I know we're springing this on you. I know it wasn't in the briefs, and we can ask your opposing counsel why it wasn't in the briefs. So we may need to give you a chance to brief this later. But it is an issue. It sounds like it's an issue that maybe you haven't studied in detail. I have read the wage orders, all of them, over and over and over. I did not review them before today's hearing, obviously. But I am familiar with them, and I am familiar with the record-keeping requirements that are in the wage orders. And what I recall is that what the Court is talking about here is really physical record-keeping, meaning that the records that the employer has to keep on site regarding how employees are paid and that kind of thing. And I think Section 226A goes outside of that. Section 226A covers the records that the employer must give to the employee, the records that the employee must have in his or her possession to know whether they get paid. I mean, I think it would be inconsistent because, you know, California has a very high public policy in making sure people get paid correctly, get paid on time. I don't think it would make sense for a wage order to eviscerate Labor Code Section 226A and take away the nine pieces of information. But as you acknowledge, there are aspects of overtime that are carved out, and it does seem like California law has carved out some things from what otherwise would be part of the Labor Code. That's a little different because you might also want to look at Angeles versus U.S. Airways, which also seems to interpret wage order number nine the way Judge Freeland was just suggesting. It's reported at 2013 Westlaw 622032, the Northern District of California, 2013. Again, Your Honors, what I do recall, and, again, I have read all the wage orders, every section of them in the different cases I've handled over the years. What I think the Court may be talking about and what the decisions that have interpreted the wage order may be talking about is the actual physical record-keeping requirements that an employer has, you know, physical time records, for example, and those kind of things. I don't think that can be stretched to cover what information the employer has to give the employee when they're getting paid. You know, this is an important thing. In fact, in the Ward case is a great example. In Mr. Ward's declaration, this is how I got the case. He contacted my firm because he was shortchanged thousands of dollars in his pay. He went to his pay stub, and there's no line item on his pay stub for hours worked or hourly rate. He went to his pay records, which are very, very cryptic time-keeping records. He couldn't figure it out by looking at that, nor by looking at the collective bargaining agreement. And so this isn't just a technical violation where we're saying the hourly rates aren't there, the hours aren't there. This is something that really impacts California workers. And here, in both of my cases, the flight attendants and the pilot's cases, they get paid a very high hourly rate. It is very important for them to know when they get that paycheck to know, okay, I'm getting, you know, 20 hours at my time-and-a-half rate or my special rate, and there's many rates in the CBA that apply here. And so I just couldn't imagine that the wage order could be interpreted such that it would take away that right of the employee to get that information. This is, you know, in the ‑‑ Do we have any California case that addresses this issue that you can point to? I'm wondering, I mean, if we think it's unclear, at least, is this an issue that needs to be certified to the California Supreme Court? It may be, and I apologize. I don't have the information sitting here today in front of you. I'll admit I haven't looked at this issue. But in general, is the issue that you're seeking in this case to have us decide an issue that really should be decided by the California Supreme Court, whether these wage statement rules apply to your client? Oh, I don't think so at all. I don't think it needs to go there. And why is that? Because the conduct that the Labor Code Section 226 applies to is all the conduct that happens here in California. You know, all my clients, the entire class of both classes are California residents, the California employees. United designates them as California employees. And if you look on there, if there's any question about that, just look at their pay stubs. You know, there's separate line items for paying California income tax. So both classes, remember, they all reside in California. They all pay California income taxes on those wages. They all pay California social disability insurance deductions on those wages, which also includes paid family leave, California. But we have several federal district court opinions at this point, all going different ways, completely confused about what the test should be under California law, having different interpretations of all of this. Isn't that a sign that this is very unclear and there is no California case directly on point? Well, I think I agree with you. The district court decisions are in conflict here. But I think the ones that are saying somehow California Labor Code Section 226 is being applied outside of the state, I think in this case that's not true for two reasons. One is a factual reason. It doesn't matter where the flight attendants or pilots do their work. It's irrelevant to the amount of money that shows up on their paycheck. It has no connection whatsoever. All that matters is time worked, that is clock in, clock out times. And then when you were performing that work, what kind of work were you doing? You look in the CBA, it tells you the hourly rate. That's it. So an employee could be working all in California, or an employee could start in California, fly to Arizona or New York, and come back to California. The paycheck is not going to be different depending on what states they're flying over. So on your argument that you just made, which I think may be slightly different than what I understood from your brief, because I thought you were saying these employees all did some of their work in California. But from what you just said, it sounds like as long as they live in California and are getting their statement with California taxes, it doesn't matter if they're in London for the entire month flying in Europe, they would still have this apply? The point I was making is it doesn't matter for the amount of money on the paycheck. Now, the fact that all of my class members work in California, I think that's a factor the court can consider. I think in the pilot's case, according to United's records, the pilots fly on average per pay period about 12% of their time in California. And the flight attendants are a little bit higher, around 18%, I believe. So I think that's a factor the court can look at. Is that an essential factor? I don't think so, no. So let's say that we had, it's a little hard in California because we're such a big state, but let's say someone lived on the border of California and Nevada, commuted across, worked 100% of their time in Nevada. If they live here in California, you would say that they're protected? I would say no. If they lived here in California and they got paid here in California, yes. I think that they would be protected, yes, absolutely. Well, why wouldn't they be paid in California? I'm just saying it's no different, it seems to me, than our facts here, except that the person is just doing 100% of the work outside the state. Well, I'm sorry, maybe I misunderstood. So, okay, in that scenario where the person lives in California but they're doing no work in California, well, I think the issue there is where are they paid, what state are they paid in? Well, but where else would they be paid? Well, if the employer pays them in California, maybe the employer is headquartered in California or not, but if they receive their paycheck in California and they're paying them. Well, wouldn't they necessarily if they live in California? Not necessarily because someone could, I mean, it's possible someone could live in California and do work in another state completely and even receive a paycheck at a P.O. Box or something like that. But, well, I think the issue would actually be addressed by this court somewhat in the Sullivan v. Oracle case, and then it went certified to the California Supreme Court. And as I recall in that case, it was nonresident class members. They performed most of the work in Colorado and Arizona. They were only in California for a tiny amount of time, way less than in my case, 12%. The issue there was not wage statements. The issue there was overtime. Well, that's true. That was the Labor Code section. But the overall takeaway, I think, from your decision and from the decision from the Cal Supremes was that you don't have to work primarily in California to get the benefit and the protection of California's labor laws. But the California Supreme Court specifically said there we're only deciding overtime and we're not talking about the rest of the California Labor Code and whether it applies. So they left open the question you're trying to pursue here. Right. That's correct. In the California case, there was no Labor Code section 226 claim. There wasn't in that case. It was just an overtime case. But I think the general takeaway is I think in the Sullivan case, I think Oracle was arguing the same thing. Oracle was arguing we shouldn't have to comply with California law because these class members only are in California a tiny amount of time. It's a small percentage of their work time in the California Supreme Court and this Court so well know. For the time they're in California, you're still subject to California's Labor Code. And I think you've got to look at what activity the statute is designed to control. Remember, Labor Code section 226, it's impossible for an employee to earn wages under that statute. In fact, it's not even a statute that requires payment of wages. The only thing the statute requires is what information the employer has to give to the employee when wages are paid. So I'm trying to figure out what your rationale is for California being able to apply its law here. Apparently, there needs to be some proportion of the work that's actually performed in California. But that just begs the question, okay, so how much? You say it can be less than 50 percent. You say absolutely. Less than 25 percent. You say yes, 10, 5, 1. I mean, what's the rationale for drawing the line? That's not from the plaintiffs in this case. That's not what we're arguing. We're saying, you know, here we do have work in California, and I think it's a factor the court can look at. I don't think it's determinative though. So you're really saying as long as the employee lives in California and the address that they receive their pay at is in California, that's all we need to know? I think those are the two most important factors, correct. If they live here and they get paid here. And remember, they're paying California income taxes on those wages. It's not like they just have minimum contacts. These are people that actually live here. And in my case, they actually live here. They're headquartered here. United has designated them as California employees, and they're getting taxed California taxes. So you may be right that the California Supreme Court would agree with you, but I don't know how we could possibly know that at this point. What are you pointing to in California law that tells us that you're definitely right? Well, Your Honor, that's a good question. I think with respect to the Labor Code Section 226, there is no authority on point. If there was, I would have cited it to you. So why don't we need to certify this to the California Supreme Court? Well, you know, the court has the discretion to do that, and this could be a case where the court would be inclined to do that. I, for my clients in the class, don't think it needs to go there. I think the statute is very clear on its face, what information needs to be provided and who it goes to. And I think, again, here, the statute is not a wage statute, so there's no issue as to where do the people perform their work, because we're not even seeking wages in the case. The case is not a wage statute. What do you take to be the purpose of providing these statements? The purpose is very clear, and it's laid out in the Sotovia Motel 6 case. It serves the California public interest of ensuring that when employees get their pay stub, they can quickly and easily look at that pay stub and figure out if they've been paid correctly. So it is indirectly related to wages, correct? Indirectly, yeah. And that's its real rationale? The purpose is so that people can figure out if they've been paid correctly, and if not, take action to get the right amount of pay. But it's not a wage statute because you can't earn wages under Section 226. There's many other statutes where you can. You can earn them under minimum wage statutes. There's overtime statutes. There's even common law quantum merit theories. You can earn wages. But 226 doesn't cover that. So I think the court needs to look at what is the purpose of Section 226. It's not a wage-earning statute. It's strictly an informational statute. In other words, what information does the employer need to provide to its employees in California when they get paid? And it's an important statute because, you know, getting paid in California, because California has determined this is an important public interest, that wage earners, especially hourly wage earners, get paid correctly and know if they're not getting paid correctly so they can take action. And, again, the example from Mr. Ward when he got shortchanged several thousand dollars on his pay stub shows why it's an important statute. You know, this is not a nitpicking or a technical violation. He could not figure out by looking at his pay stub where the mistake was. He just knew there was a mistake. But he could not figure it out because there was no hourly rates and no hours worked on his pay stub. And I think, you know, going back to the wage order issue, it couldn't be California law that the legislature would enact Labor Code Section 226 and then take away those rights in a wage order  only when there's a collective bargaining agreement. I mean, you could bargain in the collective bargaining agreement for what the wage statement should look like. But as I recall as well, well, that's interesting, Your Honor. In this case, the collective bargaining agreement doesn't address the pay stub. So the workers could ask for that in the bargaining. Well, there's many things. How do we solve the problem that your adversary says under the Commerce Clause problem of inconsistent wage statements or multiple wage statements in what is clearly a national agreement? The issue there is there is no conflict here. For example, in this case, all the plans are asking is that United Airlines fill in two blanks. They're already in compliance. There's already a wage statement. They're issuing it in every pay period. And they satisfy seven of the requirements of Labor Code Section 226. There's only two missing. Well, actually three, but it's the hours, the hourly rates, and the address. But we're not asking them to start from scratch or create a pay stub from whole cloth. We just want them to fill in the blanks that are there on the pay stub. And if United complies with Labor Code Section 226, it's automatically in compliance with the other 37 states that have pay stub laws because they're all the same. Some have more. California probably has the most requirements. Maybe it's on par with New York. But if you comply with California law on this issue, you're automatically in compliance with the other states. And, in fact, in the Bernstein v. Virgin America case, Judge Tiger noted that in the footnote that the court had looked at that because Virgin America was making the same argument that, oh, if you make us comply with California, then we're going to have to go and comply with all the other states. And he noted that, well, there's no conflict if you comply with California law. You automatically comply with the laws of the other states. So if you're looking at the burden, there is no burden. And I don't think it's a big burden here to ask United to put in the hourly rates and the hours worked so that these hourly wage earners can look at their paycheck and their pay stub and determine if they've been paid correctly. Why don't we hear from United? You've almost used up all your time, but we'll give you a couple of minutes for rebuttal. All right. Thank you, Your Honor. Let's hear from counsel for the defendant. Thank you, Your Honors. Good morning, and may it please the Court. Adam Koswini for Defendant at Pulley United Airlines. I suspect you're going to ask me about the wage order, but if I may, just one factual item that I'd like to be perfectly clear in this case. Both of these cases, Vidrio and Ward, were certified based on state of residence. It is undisputed as a factual matter that there are people in these classes who have never worked in California at all. And the reason for that is that there's a distinction in the airline industry between your state of residence, which has its commonplace interpretation, and your state of domicile, which is a contractual concept, which basically indicates where these people, these pilots and these flight attendants, bid from, flights leaving their domicile. And so it's completely undisputed, and I could point to, Your Honors, in the record if you'd like exactly where this is. But because both of these cases are cases that are certified based on residence, there are people who do not spend any time at all in California. They can live in California, but they may be domiciled in Chicago or wherever and never touch California at all. So I just think that's important because I've heard a couple of statements already this morning. Yes? Give a concrete example of an employee would live, let's say, in Los Angeles, but what? So the same way that I live in Noe Valley and I commute in my car and that's not work time, it's generally understood under state law and federal law that commuting time is not work time. Somebody who lives in L.A., to take the example, but is domiciled, quote, unquote, in Chicago, would get on a plane in L.A., a United plane, and fly on their own time to Chicago. And Your Honor looks skeptical, but this happens. That's a long commute. It is. Doesn't it usually happen when people live in less expensive places, though? I mean, maybe there's someone who does this, but it's not very common, right? It's more common for people to live in Nevada and then come into California or something like that. Your Honor, I don't, it's not in the record. My understanding of traffic in Los Angeles, you'd never make it to the airport. Well, it may very well be that your commute on the plane is less than your commute to L.A.X. That may very well be true. Your Honor, I don't have it at my fingertips, and it's not in the record in front of you exactly how frequent this is, but it is in the record that, and it's undisputed, it was not challenged below, that it does happen. Why it would happen? So that's sort of a, so first of all, it seems like maybe that's an argument that the class reps aren't representative of the whole class or something. I mean, your opposing counsel is now arguing that doesn't matter anyway. All he seems to care about is where they live and where they get their paychecks, so you may be on the same page. If it matters where they work, then we may need to get into this, but then that almost doesn't seem like it's, I don't know, it's presented, I'm not sure it's presented in this appeal the way we have it right now. So I think, by the way, I mean, I think Your Honor is right about adequacy. I oppose certification. I lost that argument below, but I agree with you that it would present an adequacy problem. The real issue that I think it highlights, and I think the Sullivan Court, the U.S. Supreme Court is, excuse me, California Supreme Court is perfectly clear on this, which, by the way, is why it does not need to be certified to the California Supreme Court in my view. Residency is irrelevant. I believe it was mentioned from the panel this morning. So let's talk about why you think it doesn't need to be certified, because I don't think Sullivan answers this question that's presented in this case at all as far as I can tell. So, Your Honor, I believe that if you look at Tidewater, particularly as Tidewater is later sort of clarified and explained by Sullivan, it is clear that extraterritoriality is a presumption against it in California. That's not even challenged by appellant in this case. And it's clear also that residency is irrelevant. Now, granted, in Sullivan it was the reverse situation. In Sullivan it was people who resided somewhere else who came into the State. By the way, who came into the State for entire work weeks. That was a stipulated — Or days. Days or weeks. Weeks, Your Honor. It was stipulated in the record that it was entire work weeks. Okay. Well, the Court says all you need is entire days in the opinion. Well, I think it — I'm not sure I agree with that. I think it leaves open the possibility that maybe days would be sufficient. But the facts in that case and the stipulated record that was certified to the California Supreme Court by this Court was full work weeks, which is obviously not what we have here. So, in example, the panel mentioned earlier, I believe, that, you know, this doesn't happen in California very often because of the size of the State. But it happens in the Northeast all the time. People will live in New Jersey. I did for a long time, and commute into New York. And no one would ever dream of arguing that the New Jersey law against discrimination or that the New Jersey law on wage statements would apply to a banker who never worked in New Jersey and spent all of his or her time, you know, down on Wall Street or something like that. And the Sullivan Court recognizes that. They did not care that these — I don't think there were too many bankers who would qualify for the minimum wage protections. Fair enough. But they would qualify for wage statement protections in California. So a fair point, though, Your Honor. So the California Supreme Court did not care in Sullivan that these folks were Arizona residents or Colorado. Right. But they were working in California. So then we have the flip, and we don't know what they would say. I mean, it didn't matter there that they didn't live in California, but they had other California connections. And so now this case presents a different way of looking at the connection. So California connections, with due respect, Your Honor, that starts to sound to me like Bernstein. And Bernstein is just not supported by California law. How do we know that? Because Tidewater says that — and it's a conjunctive statement. It talks about a number of things, two or three things. And the third thing is worked principally or exclusively in California. These people — But, again, we know that in Tidewater that was enough. But what we don't know is if there was less, whether it also would have been enough. We haven't had a California Supreme Court opinion or even a California Court of Appeal opinion, as far as I can tell, that addressed this. With respect, Your Honor, I disagree. I think you look at Tidewater to sort of see when someone is protected by California law. And you look at even earlier California Supreme Court cases that have talked about extraterritoriality, and you know that it does not apply extraterritorially unless there's an explicit statement to that effect that it should, which nobody is arguing exists here. Tidewater says that you are entitled to the protections of the California Labor Code when you work exclusively or principally in California. And under no possible definition of exclusive or principal do these folks work in California. At most, we're talking about 12 and 15 percent of the time. And I would point out — So, sorry, but can I ask you about the wage order? Because this whole thing is theoretical if California law doesn't even cover this, which I think there is a pretty good argument it doesn't. And I don't understand why it's not in your brief. It's not in my brief for the following reason. And I am very familiar with the Angeles case. I was actually — represented U.S. Airways in the Angeles case. So I'm familiar with this argument that there is this dual system of regulation in the Labor Code and in the wage orders, and that sometimes that presents some interesting sort of questions about, you know, if you waive one, do you waive both, things like that. I think it is a very good argument, Your Honor. I think it is the right argument under California law. I did not raise it in this case because I was litigating this in the trial court, and I felt on a motion for summary judgment that the extraterritoriality and DCC, as well as the RLA and ADA arguments, which were not decided below, all of these go to the fact that the law cannot apply in the first place. I felt — You don't need to reach any of those Federal questions, some of which are constitutional questions, if State law doesn't even attempt to apply. I mean, the first question is, does California law even attempt to apply? And we only answer the other ones if it is attempting to apply. And I'm just baffled by this. Well, so I actually agree with you, Your Honor, but I — conceptually, I view it a little differently. My arguments about — that I've just listed are about whether the law applies in the first place. If the law does apply in the first place, i.e., if Wage Order 9 applies, if the Labor Code applies, then you look to see if there are exceptions or exemptions within the wage order. I feel like that is, with due respect, sort of the second — you only do that if the law applies in the first place. I feel that there are — But don't we first look at what California law says, which involves looking at the regulations and the law? I mean, there's a statute and essentially a regulation, as I understand it. I just can't understand why we wouldn't first say, what is California law — what's California law trying to do? And then we ask whether Federal law allows it. But without starting with what California law is trying to do, then all this Federal stuff we're talking about for nothing. Well, arguably, at least to the extent you have quasi-jurisdictional arguments under, for example, the Railway Labor Act, we might have to reach them first because we always have to reach — or usually have to reach jurisdictional issues before we reach other issues. That's true, Your Honor. And we — to be completely candid with the panel, we struggled in the district court about sort of how exactly to align all of those arguments. In my view — and the brief gets into this a little bit — again, there's no question that the court had sort of initial jurisdiction. There's diversity. There's enough money in controversy. There's jurisdiction under CAFA. So the court — the case is properly in front of the court. Then the question becomes, you know, do the plaintiff's claims, which are under California law, does California law apply at all? And again, in my view, that's first extraterritoriality because California has said many times that its laws do not apply extraterritorially. And then secondarily, if it does, it raises the issue of the Dormant Commerce Clause. If the court gets past both of those, and I feel both are dispositive, obviously, based on the decisions below, then you raise the issue of, well, okay, now we've decided that we have this claim, but do we need to interpret the collective bargaining agreement to resolve it, which, again, if you got that far, I would think you did. That, you know, is a defensive application of RLA preemption. And the court has jurisdiction to decide the issue. It's just that if it decides that it does need to interpret the CBA, then it doesn't have jurisdiction to do that. But it has jurisdiction to decide the issue, is my point. But before — I just need you to walk me through this argument that you didn't raise in your brief. Mm-hmm. Just explain how it works. So the argument would — Well, let me just be clear. So you are agreeing with Judge Friedland that this argument you didn't raise is, in fact, dispositive, and we should just rule on that? And if that's the case, I need you to walk me through it. Sure. Again, I feel like it's not a threshold issue, which is why it wasn't raised in the  But the argument — So let's give you that it's not threshold, but if it's the tenth issue, do you win on it? I believe we would, Your Honor, yes. And I believe — Let's hear how. Let's hear how. Sure. So there is a — and I apologize, none of this is in the papers, but bear with me as I extemporaneously sort of remember what the law is in this area. So the issue is this. You have the labor code and you have the IWC, which issues wage orders, and there's a number of decisions that sort of recognize that they are coextensive, that, you know, one does not necessarily control over the other. You have to comply with both. That raises an interpretive issue, which, to answer a question from earlier, to be candid, I don't think that there is any dispositive law on. It raises the issue as to sort of whether or not there's an exemption under one would apply to the other. It is easier, candidly, in the context of overtime, because there's a labor code, Section 515B, which stemmed from — bear with me as I delve into the history here — California had always had an eight-hour daily overtime rule. There was a time when the IWC removed that overtime — that daily overtime rule from the wage orders. Sacramento was unhappy with that and so legislated that it absolutely, regardless of what the wage order said, there is daily overtime. And then there's a provision in the labor code, I believe — and I hope I'm not wrong on this — I think it's 515B, as in boy, that says that when we did that, we didn't mean to sort of disturb any of the other coextensive regulation. We're only overruling them on this one point. And so when it comes to overtime, it is very clear that because there's an exemption in Wage Order 9 for overtime, that that also applies to the labor code. It is a little murkier, to be candid with you, about whether or not that would also apply to wage statements. I feel like it would, but again, because of the fact that some of the reasons that the panel has mentioned this morning, in terms of the coextensive regulation and the fact that these are collectively bargained agreements, that they're not unrepresented employees that are at the mercy of the employer. They are represented by two of the most powerful unions in the world, quite frankly. And so I appreciate the public policy and sort of the dual regulation reasons why that might be the right result. It's very murky under California law. And so again, just as a litigator in the district court, we felt that a lot of these other issues were much clearer, and so we raised them first. And so here we are. It's clear that the wage order is trying to say that if you have a collective bargaining agreement, you don't need to worry about the wage statement rules in 226. But you're saying it's not clear that the wage order actually is operative? I think if you – well, not that it's not operative, Your Honor. But again, because there is a sort of dual regulation by both the labor code and the wage orders, I'm saying that it gets murky as to – what I'm saying is that if you The wage order is interpreting the labor code, right? I'm not 100 percent sure I would be able to agree with that as a legal matter. I'd like to because it helps me, but I'm not really sure it's right. I think it's – again, I think it's a system where unless there's a statement to the contrary, there are two bodies of law that you have to look at, and one does not necessarily trump or control the other, absent some other principle. And 515B in the labor code is that principle. So do we need to certify this question to the California Supreme Court? I don't think you do, Your Honor, because I think the issues that the district court decided on – But what if we disagree with you on that? If you happen to disagree with me on that, Your Honor, then I am unable to point you to a controlling principle of California law on this particular issue. And if we gave you an opportunity to brief it now, despite having not briefed it originally, would you have more to say, or do you think it's just going to be unclear no matter what we do? I am not going to be able to point you to a controlling principle of California law on that issue. Shifting gears a little bit, so you made the argument in your papers about how this would be a clog on interstate commerce because it would be conflicting state requirements and so forth, and your adversary, as he also said in his brief, says, well, there's no real conflict. What about that? So there's absolutely conflict, Your Honor. And I can give a little bit of detail on that, but I would also just point the panel to – there was an amicus brief submitted in this case by the Airlines for America, and pages 16 through 20 of that brief go into quite a lot of detail about how, if you were in compliance with one, you're not necessarily in compliance with all of the others. It seemed like you could, though, have a basically, like, greatest common denominator approach and comply with all of them except perhaps it's Delaware and Wyoming? Is that what it is? So, I mean, given a case where the people are living in California and we have no information that these class members are flying out of Delaware or Wyoming, why should we worry about Delaware and Wyoming? Because the mere fact that in this particular case you don't have evidence that that specific example is happening does not change the fact that this is a highly mobile workforce that has extremely limited ties, if any, from over – We're looking at the burden. I mean, so we're looking at the burden on the employer here compared to what California law does. If the burden has nothing – the actual burden for these actual employees has nothing to do with Delaware and Wyoming, I don't understand why we're talking about Delaware and Wyoming as your best argument on this conflict point. Well, we're talking about it as a factual matter to disprove the fact that if you can just come up with a California wage statement would comply everywhere else. I think it's important to point out that as a factual matter that's wrong. But the factual matter isn't the only answer to that question. The issue under the Dormant Commerce Clause is not whether it is in some way, shape, or form possible to generate a wage statement that somehow complies with all of these different requirements of different states. The question is, in a facially neutral scenario like we are here, the question is, A, what's the local interest? And, B, what's the burden on interstate commerce? And there are a number of California Supreme Court cases – Haney says this, I think Morgan says this as well – that if what you're trying to do or if what the result of what you do is regulate matters that are entirely outside of your borders, that's a per se violation of the Dormant Commerce Clause. So ultimately my answer to your question is that by passing a wage statement law in California that's very restrictive and the only way to comply with it is to make sure all of your employees everywhere have a California-compliant wage statement because we can't identify who these people are. He's saying the class is the people who live in California. It's very easy to figure out who those people are. The people you're paying California taxes are are the people and you're doing that. So you figure that out and then you either give them California-compliant wage statements or you give them nationally-compliant wage statements. And if we're supposed to look at the burden and that's possible to do in the Because if you allowed a state to just simply say, I'm going to pass the most restrictive statute in the nation and now in order to comply with my law they have to comply with this everywhere, which is essentially what you're saying. That is a per se violation of the Dormant Commerce Clause. So maybe some theoretical thing. If they made it like you've got to print it on gold, okay, then we evaluate the burden of printing the wage statement on gold and maybe there's a problem. But this is like you give the address and you give the hours. It's going to comply with most places. I don't understand really why it's so burdensome. Well, the other issue is, and this gets a little bit into the RLA preemption issue, unfortunately, but these folks, and I'm talking generally about pilots and flight attendants since we're here on both cases, they are rarely paid by the hour for one thing. They are, and the briefing and the declarations go into this in detail, and I'm running low on time, but I'll try to be quick here. There's basically one of three different compensation formula that will apply if you're a pilot, a lineholder pilot. There's two separate compensation formula that would apply if you're a reserve pilot, and the same is true for flight attendants, two different compensation schemes depending on whether you're a lineholder or a reserve flight attendant. Only one of those in each of the contexts, pilot and flight attendant, has anything to do with hours. It is a tremendous burden because of the complexity of the collective bargaining agreements. The compensation provisions of these collective bargaining agreements are six, seven pages long, single spaced, and extremely, extremely dense, which the panel can look at for themselves. Judging by your reactions, maybe you already have. Applying that to a situation where you have to just say, you know, how many hours they worked and what is the hourly rate, I think there's an argument that we never got to in the district court because of the rulings on the issues that the district court ruled on that it's actually completely impossible. But if it's not completely impossible, it is incredibly burdensome because, again, it's a highly mobile workforce. People are shifting around all of the time. They're compensating. So maybe this is why the wage order says you don't have to do it. It could be, Your Honor. I'm out of time. Thank you. Thank you very much. I appreciate your argument. We'll give you two minutes for rebuttal. Thank you, Your Honors. Just very quickly, you know, I haven't read the wage order. I can only imagine what it's saying there. But I think what I'm hearing from the Court is that it's seeing a conflict between potentially the wage order and the statute, Labor Code Section 226, or the wage order takes away the protections of 226. I'm just thinking, going back to my civics class in government, it's like if you have a statute, it's enacted by the legislature, which is Labor Code Section 226. That's the law of the land. That was enacted by elected officials. The Industrial Welfare Commission, which promulgates the wage orders, that's a delegated body. It's an administrative agency. And it's designed to issue regulations in keeping with the statute. If, in this case, you have a wage order that conflicts with Labor Code Section 226, Labor Code Section 226 is going to trump the wage order every time. Unless they thought that that was the only way to reconcile it with the Federal Railway Labor Act, which would otherwise trump the state law. If that was their intent, Your Honor, they would have amended Labor Code Section 226 or put it in the original version of the statute. There's nothing in Labor Code Section 226, enacted by the legislature, that says there's an exemption for the collective bargaining agreements or anything else. It's very straightforward. There's an exemption for government agencies in there. So they put exemptions in there, and it's at the very end. You know, if you're a government agency, you don't have to comply with that. But there's nothing in the statute itself that says, oh, well, unless you're, you know, subject to a CBA, don't worry about this. And if that's the way this Court interprets the wage order. Well, it's a CBA that's under the RLA. And so the RLA is about interstate transportation. And it's not that crazy, I think, to have state law saying, okay, we have a general rule, but of course these people are going all around the country and have these collective bargaining agreements that really govern how they're paid. We didn't mean them. Yeah. But I think Labor Code Section 226, and there's cases on that from the U.S. Supreme Court and I think in this Court as well, 226 is a fundamental state law right, independent of collective bargaining agreements. And under the RLA, the cases also – If an administrative – I don't know whether this is the California equivalent of Chevron, but if an administrative agency in California interprets a California statute in such a way that it doesn't apply to contracts under the RLA, don't we give that deference? I don't think so. Not – well, I think you would look at that, but I think if their interpretation exceeds the bounds of the actual statute, then I think they're out of bounds. And I think the statute controls absolutely over the wage order. Absolutely. And if that's what the Court sees here, then the Court needs to apply Labor Code Section 226. I think that's very clear. I mean, if the Court – it sounds like the Court is really focused on this issue. It was the first issue raised. Maybe this is an issue we need additional briefing on. I apologize. I didn't catch this issue. It's not your fault. It wasn't in the brief. I would have loved to – I would have briefed it for sure. Maybe we need to brief it because I think there probably is case law on this where you have a Labor Code section and a wage order that don't match up. And I suspect the Labor Code section wins. What about the argument on the other point that you're – that there is a huge burden, your adversary says, in having to provide these wage statements because these employees, given the very nature of their contracts and the way they operate, are not paid by the hour normally at all. So the – it's not a question that there's a conflict between two different states other than Wyoming and Delaware. It's more that it would be a huge burden for them to even ascertain what the hour equivalent was for purposes of them producing the wage statement. It's an illusory burden. It's not real. Here's why. The computer calculates the wages correctly, and the computer has the various hourly rates from the CBA. It has the hours worked. It knows what kind of hours are worked, and it generates the pay stub and the paycheck. All we're asking is that that information get pulled from that computer database and put into the pay stub. The other thing is the MPG issue. There are times that the pilots have a minimum pay guarantee so that if they don't work hours over that, they're guaranteed certain pay. But in the event when they go over the minimum pay guarantee, they're paid by the hour. And there's not that many hourly rates in the CBA. They're listed, specifically listed in the CBA for both flight attendants and pilots. We want them to be on the pay stub. But if they don't reach that, if they're just getting paid on the MPG, MPG is based on hours worked. How are they going to know if they qualify for the MPG unless they have the hours and the rates on that pay stub, even if they didn't make, get past the MPG, the minimum pay guarantee? The only way to know they're getting paid correctly on the minimum pay guarantee is to see the hours they worked for that pay period and at the rates. Otherwise, same problem before like my client had when he got his pay stub and he couldn't figure it out. Okay. Thank you, Counsel. I appreciate the arguments today. The cases just argued will be submitted. And we will move to the next case on the calendar, which is Oman versus Delta Airlines.
judges: Watford, Friedland, Rakoff